IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KIRBY TATE                                                                                              PETITIONER

VS.                                                            CIVIL ACTION NO. 4:08cv9-DPJ-FKB

LAWRENCE KELLY                                                                             RESPONDENT

### REPORT AND RECOMMENDATION

This is an action for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Having considered the Petition, the other filings of the parties, and the state court record, the undersigned recommends that habeas relief be denied and the Petition be dismissed with prejudice.

### I. Facts and Procedural History

On June 20, 2003, Meridian, Mississippi police officer James Ramsey clocked Kirby Tate driving fifteen miles over the speed limit. Officer Ramsey initiated a traffic stop and called in to dispatch with the tag number for Tate's truck. During the course of the stop, Ramsey called and received backup. A pat-down of Tate revealed a bag containing marijuana. He was arrested, and after a drug dog alerted to the truck's cab, the agents opened the truck and found additional marijuana and at least three Oxycodone tablets. Tate was tried and convicted in the Circuit Court of Lauderdale County of possession of more than an ounce but less than a kilo of marijuana[1] with intent to sell (Count I) and possession of oxycodone (Count II). At the time, Tate had four prior felony convictions:

---

[1] The exact quantity of marijuana was 289.8 grams.

Two 1991 convictions for sale of less than an ounce of marijuana, and 2003 convictions for delivery of marijuana and possession of marijuana with intent to distribute, more than an ounce but less than a kilo.[2]  Tate had received a sentence of three years (suspended) on each of the 1991 convictions.  For each of the 2003 convictions, Petitioner had received an enhanced sentence and was sentenced as an habitual offender to a term of sixty years, without the possibility of parole or early release, with the sentences to run concurrently.[3]  As a result of these prior convictions, Tate was sentenced to a term of sixty years on Count I and a concurrent sentence of sixteen years on Count II, without the possibility of parole or early release, the sentences being enhanced by Tate's status as a second, subsequent drug offender under Miss. Code Ann. § 41-29-147 and as an habitual offender under Miss. Code Ann. § 99-19-81.  The sentences were to run concurrently with one another and with his two previous sixty-year sentences.  The Mississippi Court of Appeals affirmed his conviction and sentence, and his application for post-conviction relief was denied.  He then filed the present habeas petition, raising the following grounds for relief (as stated in the Petition):

1. The searches and seizures of Petitioner's vehicle and person were illegal in violation of the Fourth Amendment.

2. Petitioner's double enhanced stacked sentence is contrary to federal law where a judge found enhancement factors by a preponderance of the evidence rather than a jury finding such facts beyond a reasonable doubt.

---

[2] The actual amounts were 435 grams and 531 grams, respectively.

[3] The 2003 convictions were the subject a previous habeas action in this court, *Kirby Tate v. Warden Jerry Parker*, civil action no. 4:06cv99-DPJ-JCS.  This court denied relief.  The case is currently on appeal to the Fifth Circuit.

3. Petitioner's sixty-year sentence without parole violates the Eighth Amendment's guarantee against cruel and unusual punishment.

4. Petitioner was denied his right to trial counsel of his choice.

5. Petitioner was denied effective assistance of counsel by the following failures on the part of his trial attorney:

   A. Failure to request any discovery;

   B. Failure to file pretrial motions and call for hearing ten days before trial as ordered by the trial judge;

   C. Failure to investigate false claims of police intelligence that Tate was a known drug transporter with secret compartments in his truck;

   D. Failure to discover the identity of the unidentified caller who provided intelligence;

   E. Failure to prepare for recusal hearing, *i.e.*, investigate whether Judge Roberts had accepted Tate's prior 1985 or 1991 guilty pleas;

   F. Failure to investigate and prepare for suppression hearing, *i.e.*, argued "exigent circumstances" rather than "reasonable suspicion";

   G. Failure to object to prosecutorial misconduct, *i.e.*, arguing facts not in evidence and send-a-message argument that a "leopard cannot change its spots"; and

   H. Failure to object to the state's use of double and triple hearsay statements construed to be a "confession."

6. Whether prosecutorial misconduct denied Tate a fair trial with a "send-a-message" closing argument that "a leopard cannot change its spots," by intimidating an exculpatory witness, and by arguing facts not in evidence.

7. Whether the state, through official misconduct, violated Tate's constitutional right to be free from an undue burden of government interference with his interstate commerce in the seafood business where police officers repeatedly unlawfully stopped, searched and seized his seafood delivery truck and destroyed the seafood upon finding no marijuana.

## II. Analysis

### A. Procedurally-barred Claims

The claims enumerated above as Two, Four, Five, Six and Seven were presented to the state court in Tate's motion for post-conviction relief. The state court held that these claims were procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1).[4] Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural rule is "adequate" if it is regularly and consistently applied. *Johnson v. Mississippi*, 486 U.S. 578, 589 (1986); *see also Amos v. Scott*, 61

---

[4]Section (1) of Mississippi Code § 99-39-21 sets forth Mississippi's "contemporaneous objection rule" as applied to post-conviction claims:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

At the time of Tate's direct appeal, this rule applied to claims of ineffective assistance of trial counsel where a defendant employed different counsel to prosecute his appeal. *See Lockett v. State*, 614 So. 2d 888, 894 (Miss. 1992). Because Tate employed new counsel for his appeal, he waived his claim of ineffective assistance of trial counsel by not raising it on direct review. The Fifth Circuit has recognized this rule as an adequate and independent state ground for denying post-conviction relief. *See Nixon v. Epps*, 405 F.3d 318, 323 (5th Cir. 2005).

F.3d 333, 339 (5th Cir. 1995) ("An `adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims").  A state procedural rule is presumed to be adequate when the state court expressly relies upon it in denying collateral relief.  *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Tate has attempted to circumvent the procedural bar by claiming the benefits of every possible exception: He contends that the state court's rejection of his ineffective assistance claims was based, in part, on the merits, and therefore federal habeas review is not precluded.  He further argues that the contemporaneous objection rule is not widely or consistently followed, that he had cause for his defaults, and that this court's failure to consider the merits of his claims would result in a fundamental miscarriage of justice.  He has not, however, established any arguable basis for application of any of these exceptions.   While the state court's order rejecting Tate's post-conviction claims addressed the merits of his *Strickland* claims, it did so in the alternative and after clearly stating that they were procedurally barred.  A state court decision is not an adjudication on the merits, even if the merits are reached alternatively, if the decision is clearly based on a procedural default.  *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  Furthermore, the Fifth Circuit has explicitly held that Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  And, while Tate states that this rule has not been applied consistently, he has not met his burden of demonstrating that the state has failed to apply the procedural bar to claims identical or similar to his own.  *See id.*  Tate's

5

reliance upon his appellate attorney's failure to raise these issues on direct appeal as cause for his defaults is equally unavailing. In order for a habeas petitioner to rely on ineffectiveness of appellate counsel as cause to overstep a state procedural bar, he must first raise and exhaust in state court an independent constitutional claim of ineffectiveness of that counsel. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Tate has not met this requirement. Nor has he established any other circumstance, external to himself, sufficient to satisfy the "cause" prong of the cause and prejudice test. Finally, Tate has failed to establish any potential fundamental miscarriage of justice, as he has failed to come forward with new, credible evidence of actual innocence of the crimes of which he was convicted. *See Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). Accordingly, this court may not review the merits of Grounds Two, Four, Five, Six and Seven.

### B. Fourth Amendment Claim

In Ground One of his Petition, Tate claims that his conviction was based upon evidence obtained as a result of an unconstitutional search and seizure. Specifically, he contends that there was not reasonable suspicion to detain him after the initial traffic stop and that the subsequent search of his person and vehicle which resulted in discovery of contraband was likewise illegal.

Fourth Amendment violations generally do not provide a basis for federal habeas relief. In *Stone v. Powell,* 428 U.S. 465 (1976)*,* the Supreme Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that

6

evidence obtained in an unconstitutional search or seizure was introduced at his trial. . . ." *Id.* at 482.

There is no question but that the state provided the requisite opportunity in Tate's case. Tate moved to suppress the evidence seized in the search, and the trial court held a hearing on the motion. Tate subsequently raised the issue on appeal, and the Mississippi Court of Appeals, after a careful analysis, concluded that the trial court had not erred in denying the motion to suppress. Therefore, no federal relief is available on Petitioner's Fourth Amendment claim.

## C. Eighth Amendment Claim

Petitioner's Eighth Amendment Claim (Ground Three) was previously presented to and adjudicated on the merits by the state court within the meaning of 28 U.S.C. § 2554(d) in his direct appeal. It is therefore subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of this claim involved "an unreasonable application of . . . clearly established Federal law . . . as determined by the Supreme Court of the United States." *Id.* The Supreme Court has repeatedly stated that " 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 at 411. Rather, the application must be not only incorrect, but also

"objectively unreasonable." *Renico,* 130 S.Ct. at 1862 (quoting *Williams*, 529 U.S. at 409).

Thus, the first task for the undersigned is to determine the applicable Eighth Amendment law and principles that have been "clearly established" by the United States Supreme Court within the meaning of § 2254(d). In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court considered this very question. It admitted that its Eighth Amendment jurisprudence regarding sentences has not been "a model of clarity," and further acknowledged that it had failed to establish "a clear or consistent path for courts to follow" in analyzing whether a particular sentence for a term of years violates the Eighth Amendment. *Id.* at 72. The Court concluded that in a habeas case raising the issue of the constitutionality of a sentence of a term of years, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Stated another way, it is clearly established that a sentence which is grossly disproportionate to the crime violates the Eighth Amendment, but it is anything but clear how that principle is to be applied in a given case.

The primary guidance on application of the gross disproportionality principle in a habeas case is to be found in *Lockyer*, the only case in which the Supreme Court has applied AEDPA's standard of review to an Eighth Amendment claim challenging a term of years. The method employed by the Court in *Lockyer* was to consider the facts of the petitioner's case in light of the crimes and sentences involved in other Supreme Court

habeas cases involving Eighth Amendment challenges to non-capital sentences: *Rummel v. Estelle*, 445 U.S. 263 (1980), *Solem v. Helm*, 463 U.S. 277 (1983*)*, and *Harmelin v. Michigan*, 501 U.S. 957 (1991).

In *Rummel,* the petitioner was convicted of obtaining $120.75 by false pretenses and sentenced to a term of life imprisonment, with the possibility of parole. His sentence was enhanced based upon prior felony convictions for credit card fraud in the amount of $80 and passing a $28.36 forged check. After explicitly acknowledging for the first time the applicability of the "gross disproportionality" principle to a sentence for a term of years, the Court held, in a five-to-four decision, that Rummel's sentence did not violate the Eighth Amendment. *Id.* at 285.

Three years later, in *Solem,* another five-to-four decision, the Court set aside as disproportionate a life sentence without the possibility of parole, imposed under a recidivist statute, for passing a bad check in the amount of $100. The conviction represented the defendant's seventh non-violent felony.[5]

In *Harmelin,* the Court reviewed a sentence of life, without the possibility of parole, for possession of more than 650 grams of cocaine. No recidivist statute was involved.

---

[5]The petitioner in *Solem* had three prior convictions for third degree burglary, one for false pretenses, one for grand larceny, and one for driving while intoxicated.

In *Solem*, the Court listed three factors relevant to a proportionality analysis: the gravity of the offense in relation to the harshness of the penalty, sentences imposed for other crimes in the same jurisdiction, and sentences imposed for the same crime in other jurisdictions. *Id.* at 292. As explained *infra* at n. 6, the three-factor analysis did not survive the subsequent Supreme Court case of *Harmelin v. Michigan*, 501 U.S. 957 (1991)*.*

9

The Court held, five-to-four, that the sentence did not violate the Eighth Amendment.[6]

Most recently, in *Lockyer,* the Court was presented with the case of a petitioner who had been convicted of two counts of "petty theft with a prior conviction" for stealing videotapes worth approximately $150 from two different stores. He was sentenced under California's three strikes law to serve consecutive terms of 25 years to life, based upon three prior convictions for first degree residential burglary. The Court concluded that the state court's rejection of Lockyer's Eighth Amendment claim was not contrary to, nor did it involve an unreasonable application of, the Supreme Court's clearly established gross disproportionality principle. *Id.* at 76-77.

A comparison of these cases to Tate's leads the undersigned to conclude that the Mississippi court's application of the proportionality principle in Tate's case was not objectively unreasonable. *Rummel* involved a life sentence for the relatively minor crime of fraudulently purchasing $80 worth of goods, and his two prior crimes were similarly nonviolent and involved relatively small amounts. *Lockyer* involved two minor thefts and prior non-violent crimes, for which he was sentenced to a total of fifty years to life. Tate's sentence of 60 years without parole for a third drug offense does not stand out as more disproportionate than either of these. *Hamerlin* provides perhaps the closest case for comparison because of the nature of the crime involved and the sentence. That case involved possession of a significant amount of a controlled substance. The Court

---

[6]Seven members of the Court found an Eighth Amendment guarantee against disproportionate sentences. However, five members rejected the continued application of the three *Solem* factors. Thus, while the "grossly disproportionate" standard of *Rummel* and *Solem* survives, the *Solem* analysis does not. *See McGruder v. Puckett*, 954 F.2d 313 (5th Cir. 1992).

concluded that a mandatory life sentence for Hamerlin's crime, without the possibility of parole, was not violative of the Eighth Amendment. While it is true that cocaine is generally considered to be a more serious drug than marijuana, it is also true that no recidivist statute was involved in *Hamerlin*. Tate, on the other hand, has demonstrated a repeated inability to abide by Mississippi's drug laws, and Tate's prior convictions are necessarily a part of the "crime" to be considered in assessing the proportionality of his sentence. A court could reasonably conclude that if Hamerlin's sentence was not grossly disproportionate, then neither is Tate's.

*Solem*, while it may add to the confusion in the Supreme Court's Eighth Amendment proportionality jurisprudence, does not add significantly to Petitioner's argument. The facts of *Solem,* set forth *supra*, differ markedly from those of Tate's, and thus this court cannot hold that the state court "confront[ed] a set of facts that are materially indistinguishable from a decision of [the Supreme Court]" and arrived at a contrary result. Furthermore, while one could argue that *Solem* is inconsistent with the other cases discussed herein, that very inconsistency and uncertainty in the Supreme Court law renders it impossible for Tate to establish that he is entitled to relief under the "unreasonable application" clause of § 2254(d).

"The gross proportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer,* 538 U.S. at 76. While Tate's sentence is harsh, his case can hardly be classified as "extraordinary" when compared with the crimes and the sentences upheld in *Rummel*, *Harmelin*, and *Lockyer*. The Mississippi court's rejection of Tate's Eighth Amendment claim was not an unreasonable application of the clearly

11

established gross proportionality law of the Supreme Court.  Accordingly, habeas relief on this claim is beyond the authority of this court.

### III. Conclusion

Tate has failed to meet the requisite standard under the AEDPA, 28 U.S.C. § 2254(d), on his Eighth Amendment claim.  His Fourth Amendment claim is not cognizable on habeas review, and the remainder of his claims are procedurally barred. Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 30th day of December, 2010.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE