UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KIRBY TATE                                                                                                PETITIONER

V.                                                                        CIVIL ACTION NO.: 4:08-CV-9-DPJ-FKB

LAWRENCE KELLY                                                                                     RESPONDENT

ORDER

This Petition for Writ of Habeas Corpus [1] is before the Court on the Report and Recommendation [20] of Magistrate Judge F. Keith Ball.  The magistrate judge recommended dismissal of Tate's Petition because Tate's Fourth Amendment claim is not cognizable in a habeas proceeding; his Eighth Amendment claim fails to demonstrate that the state-court judgment was contrary to or involved an unreasonable application of clearly established federal law; and Tate procedurally defaulted on his remaining claims under section 99-39-21 of the Mississippi Code.  The Court agrees.

The magistrate judge provided a thorough recitation of the case and analysis of the issues.  The Court will therefore simply adopt the recommendation without repeating the background information.  The Court will, however, address issues raised in Tate's Objection.

I.        Factual Objections

Tate objected to each of the magistrate judge's grounds for dismissal.  He first disputed a few factual statements in the Report and Recommendation, but the facts were not material to the legal analysis.

II.       Procedural Bars

Next, Tate argued that the state procedural rules barring his right to federal habeas relief are inadequate because they were "not regularly and consistently applied around the time of

Tate's appeal." Objection [23] at 3. But Tate fails to cite any cases supporting his allegations. Even so, "occasional acts of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate; after all, 'regular' is not synonymous with 'always.'" *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995) (citations omitted).

III.    Fourth Amendment Claim

Tate contends that his Fourth Amendment claim should not be barred under *Stone v. Powell*, because the state did not offer a full and fair hearing on his motion to suppress. *See* 428 U.S. 465 (1976). Specifically, Tate claims that the trial judge failed to fully review the video of his arrest at his suppression hearing and consider its implications. But in affirming the trial court's denial of Tate's motion, the Mississippi Court of Appeals concluded that the trial judge did indeed view the video before denying the motion. *See Tate v. State*, 946 So. 2d 376, 381 (Miss. Ct. App. 2005). And under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(e)(1) (2006), this Court must presume the correctness of facts in the state-court record. *Accord Sumner v. Mata*, 455 U.S. 591, 592–93 (1982) (explaining that presumption applies equally to trial- and appellate-court findings of fact). Tate has not rebutted this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Tate's Fourth Amendment argument also fails because a full and fair hearing is not limited to the hearing at the trial court level—it includes the appellate process. *See Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005) (denying certificate of appealability on Fourth Amendment claim based on *Stone* and noting "the district court found that Petitioner was afforded a full and fair opportunity to litigate his search and seizure claim at trial and on direct appeal"). Here, the Mississippi Court of Appeals fully considered Tate's Fourth Amendment argument.

Aside from the procedural arguments, Tate maintains that the trial court simply reached the wrong conclusion in denying his motion to suppress.  But even if the trial court misapplied federal law, that would not be sufficient.  "If the term 'fair hearing' means that the state court must correctly apply federal constitutional law, *Stone* becomes a nullity." *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978), *cited in Balentine v. Quarterman*, 324 F. App'x 304, 307 (5th Cir. 2009).

IV.    Eighth Amendment Proportionality Argument[1]

Tate contends that his Eighth Amendment claim deserves habeas review because his sentence is grossly disproportionate to the crime.  He then attempts to salvage his Eighth Amendment claim from Judge Ball's recommendation by factually distinguishing the cases relied upon in the Report.  Tate suggests that *Solem v. Helm*, 463 U.S. 277 (1983) is a closer fit and that he has demonstrated an objectively unreasonable application of federal law.

The Eighth Amendment disproportionality argument is Tate's most compelling.  But the question is not whether the undersigned thinks the sentence is constitutional.  As Judge Ball noted, the Supreme Court has repeatedly stated that under the AEDPA, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

---

[1] This is not the only substantial sentence Tate faces.  On November 7, 2003, he was sentenced in cause number 298-03 in the Circuit Court of Lauderdale County, Mississippi, to another 60-year term of imprisonment.  After exhausting his appeal in that case, Tate filed a habeas petition in this Court which was denied and is now on appeal.  Interestingly, it appears that Tate did not raise the Eighth Amendment proportionality argument in the other habeas petition.

law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Even "clear error" is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that ruling must be "objectively unreasonable" and that "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous") (citation and quotations omitted). Rather, the application must be not only incorrect, but also "objectively unreasonable." *Renico,* 130 S. Ct. at 1862 (quoting *Williams*, 529 U.S. at 409). Objective unreasonableness will not be found if "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation and quotations omitted).

Earlier this year, the United States Supreme Court emphasized the significant deference § 2254(d) affords. First in *Premo v. Moore*, the Court explained that § 2254(d) deference compounds when applied to other deferential tests. 131 S. Ct. 733 (2011). There, the Court considered a claim of ineffective assistance of counsel under the two-step test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 739–46. The Court observed: "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 740 (citations omitted). As in *Premo*, the standard of review under the AEDPA applicable to Tate's Eighth Amendment claim is especially deferential in light of the historical deference accorded state-court sentences that conform to statutory guidelines. *See Gregg v. Georgia*, 428 U.S. 153, 175 (1976) ("[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity."), *cited in Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986) (affirming district court's denial of writ). *See also Rummel v. Estelle*, 445 U.S. 263, 266 (1980)

(holding "one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative").

The same day it decided *Premo*, the Court considered § 2254 in *Richter*, where it observed:

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.

131 S. Ct. at 786 (citations and punctuation omitted). The *Richter* Court again observed that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer*, 538 U.S. at 75). "If this standard is difficult to meet, that is because it was meant to be." *Id*.

In this precise context—Eighth Amendment proportionality—the United States Supreme Court has concluded that "the only relevant clearly established law amenable to the . . . 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 72–73 (citations omitted). Review of the significant cases in this area confirms that Eighth Amendment disproportionality has not been "squarely established" in a way that benefits Tate, *Richter*, 131 S. Ct. at 786, and has led to considerable debate in the Supreme Court. *Compare Ewing v. California*, 538 U.S. 11 (2003) (5-4 decision generating five separate opinions); *with Harmelin v. Michigan*, 501 U.S. 957 (1991) (5-4 decision generating five separate opinions); *and Solem*, 463 U.S. 277 (5-4 decision generating five separate

opinions); *and Hutto v. Davis*, 454 U.S. 370 (1982) (6-3 decision generating three separate opinions); *and Rummel*, 445 U.S. 263 (5-4 decision generating three separate opinions). Because the rule is not "squarely established" and remains "general," the State's decision is given even "more leeway." *Richter*, 131 S. Ct. at 786.

On direct appeal, the State applied the standard established in *Solem v. Helm*, 463 U.S. 277 (1983), and concluded that no violation occurred. *Tate*, 946 So. 2d at 386. On habeas review, this Court must consider whether the State's decision was objectively unreasonable "according to the precedents of" the United States Supreme Court. *Richter*, 131 S. Ct. at 786 (citation omitted).

Two cases appear to stake the polar extremes. In *Rummel* the petitioner had two prior felonies related to a bad check and a misused credit card for collective bounty of less than $110. 445 U.S. at 265–66. For his third felony, obtaining $120.75 under false pretenses, he received life in prison with a possibility of parole. *Id*. at 266. The Supreme Court upheld the sentence. *Id*. At the other end of the spectrum is *Solem*, where another deeply divided Court found gross disproportionality in sentencing the petitioner to life without parole for passing a bad check in the amount of $100.00, his seventh nonviolent felony. 463 U.S. at 303.

Tate relies heavily on *Solem*, but that case specifically stated that it did not overrule *Rummel*. 463 U.S. at 288 n.13. And the analysis in *Solem* was not encumbered by the AEDPA—which became law in 1996—or the more recent reassertions in *Richter* and *Premo*. *Solem* was also not the final word. After *Solem*, the Court decided cases such as *Harmelin*, where a fractured Court limited the broader language in *Solem* and affirmed a life sentence without possibility of parole for a defendant with no prior felony offenses who was convicted of

possessing 650 grams of cocaine.  501 U.S. at 994–97; *see also Ewing*, 538 U.S. 11 (rejecting challenge to sentence of 25 years to life for theft of a few golf clubs).

Tate offers factual distinctions for many of these cases, and the Court acknowledges that they are not identical to Tate's case.  But a closer fit is found in *Hutto v. Davis*.  Two years after *Rummel*, the Court issued a per curiam opinion in *Hutto*, considering a 40-year sentence for possession of about nine ounces of marijuana with intent to distribute.  454 U.S. at 370-71.  Unlike the present case, the petitioner in *Hutto* was not sentenced under a recidivist statute, but the United States Supreme Court still reversed the Fourth Circuit's finding of gross disproportionality.  *Id.* at 375.  The Court concluded *Hutto* with a sharp admonishment to lower courts to follow *Rummel* "no matter how misguided the judges of those courts may think it to be."  *Id.*

Not surprisingly, in 2003 Justice O'Connor acknowledged in another 5-4 decision that the Court's "precedents in this area have not been a model of clarity."  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  *Lockyer* is significant because unlike *Solem*, it addressed the deferential standard found in the AEDPA.  The *Lockyer* petitioner was convicted of petty theft (stealing about $150 worth of videos).  538 U.S. at 70.  Although he had a more extensive list of prior convictions than Tate, the crime he was sentenced for was so minor that it could have been charged under state law as a misdemeanor.  *Id.*  Yet, the petitioner received two consecutive terms of 25 years to life under California's recidivist statute.  Like Tate, the petitioner in *Lockyer* relied heavily on *Solem*, and he prevailed before the Ninth Circuit Court of Appeals.  The Supreme Court reversed with heavy deference to the AEDPA.  *Id.* at 70–71. The Court concluded:

> [T]he governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle—the precise contours of which are unclear. And it was not objectively unreasonable for the California Court of Appeal to conclude that these contours permitted an affirmance of Andrade's sentence.

*Id*. at 76 (citations and quotations omitted).[2]

The ultimate question is whether "fairminded jurists could disagree" on the correctness of the state court's decision. *Richter*, 131 S. Ct. at 786. It appears from the available precedent that they have done just that regarding every sentence to reach the Supreme Court. *Lockyer*, 538 U.S. at 75–77. With this level of "uncertainty" among our country's highest jurists, the Court concludes that the Mississippi Court of Appeals was not "objectively unreasonable" in affirming Tate's sentence. *Richter*, 131 S. Ct. at 786. The sentence was certainly harsh, and a case may be made under *Solem* that it was unconstitutional, but it was within the range of the Supreme Court's holdings in cases such as *Rummel*, *Hutto,* and *Harmelin*. And unlike the petitioners in *Hutto* and *Harmelin*, this was Tate's third conviction for possession with intent to distribute. Thus, Tate's sentence addressed more than mere possession, it addressed recidivist conduct. As long as *Rummel* and *Hutto* remain valid law, the deference discussed in *Richter* dictates denial of Tate's petition. Nevertheless, the Court has sufficient concern to certify this one issue for appeal.

---

[2]Justice O'Connor further noted the lingering "uncertainty" among justices on the United States Supreme Court as to "how, if at all, a defendant's criminal record beyond the requisite two prior strikes affects the constitutionality of his sentence." 538 U.S. at 76 (citations and punctuation omitted). Indeed, four justices would have found an unreasonable application of federal law in *Lockyer*. *Id*. at 77.

IT IS, THEREFORE, ORDERED that the Report and Recommendation of United States Magistrate Judge F. Keith Ball be, and the same is hereby, adopted as the finding of this Court, and the same entire action should be dismissed with prejudice.

A separate judgment will be entered herein in accordance with the Order as required by Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 23rd day of March, 2011.

                                                     s/ *Daniel P. Jordan III*
                                                   UNITED STATES DISTRICT JUDGE